# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| RIGOBERTO CHAVEZ, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 17-cv-03102 |
| v. ) | |
| ) | |
| RICARDO MARIN, FORMER ) | COMPLAINT FOR VIOLATIONS OF |
| WARDEN NIKKI ROBINSON, ) | CIVIL RIGHTS |
| WARDEN DAVID GOMEZ, ) | |
| LIEUTENANT CHARLES TRUITT, and ) | **JURY DEMANDED** |
| MAJOR REBECCA WORTH, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

Plaintiff, RIGOBERTO CHAVEZ, JR., by counsel, for his Complaint against Defendants, RICARDO MARIN, FORMER WARDEN NIKKI ROBINSON, WARDEN DAVID GOMEZ, LIEUTENANT CHARLES TRUITT, and MAJOR REBECCA WORTH, alleges as follows:

### JURISDICTION AND VENUE

1. This action arises under the United States Constitution and the Civil Rights Act of 1871 [42 U.S.C. Section 1983]. This court has jurisdiction under and by virtue of 28 U.S.C. Sections 1343, 1331, and 1367.

2. Venue is proper in the Northern District of Illinois, under 28 U.S.C. Section 1391, because the acts complained of occurred within this District and, upon information and belief, Defendants reside within this District.

### PARTIES

3. RIGOBERTO CHAVEZ, JR., (hereinafter "CHAVEZ") is and was, at all times herein mentioned, a citizen of the United States residing within the jurisdiction of this Court.

4. Defendant RICARDO MARIN (hereinafter "MARIN") was, at all relevant times, employed by the Illinois Department of Corrections (hereinafter "IDOC") as a correctional officer at Sheridan Correctional Center (hereinafter "Sheridan") and was acting under color of state law and as the employee, agent, or representative of the State of Illinois. This Defendant is being sued in his individual capacity only.

5. Defendant FORMER WARDEN NIKKI ROBINSON (hereinafter "ROBINSON") was, at all relevant times, employed by IDOC as the Warden of Sheridan and was acting under color of state law and as the employee, agent, or representative of the State of Illinois. On or around May 16, 2016, during the events complained of herein, she was named deputy director of the Northern District for IDOC. This Defendant is being sued in her individual capacity only.

6. Defendant WARDEN DAVID GOMEZ (hereinafter "GOMEZ") was, at all relevant times, employed by IDOC as the Warden of Sheridan and was acting under color of state law and as the employee, agent, or representative of the State of Illinois. He replaced ROBINSON as the Warden of Sheridan on or around May 16, 2016, during the events complained of herein. This Defendant is being sued in his individual capacity only.

7. Defendant LIEUTENANT CHARLES TRUITT (hereinafter "TRUITT") was, at all relevant times, employed by IDOC as a correctional Lieutenant at Sheridan, was one of MARIN's supervisors, and was acting under color of state law and as the employee, agent, or representative of the State of Illinois. This Defendant is being sued in his individual capacity only.

8. Defendant MAJOR REBECCA WORTH (hereinafter "WORTH") was, at all relevant times, employed by IDOC as a corrections Shift Supervisor at Sheridan, was MARIN's direct supervisor, and was acting under color of state law and as the employee, agent, or representative of the State of Illinois. This Defendant is being sued in her individual capacity only.

**FACTUAL ALLEGATIONS**

9. From November 18, 2014 to November 18, 2016, CHAVEZ was incarcerated at Sheridan, an IDOC prison located in Sheridan, Illinois.

10. CHAVEZ was released from Sheridan on November 18, 2016, and is currently on parole.

11. CHAVEZ is gay.

12. From around October 2015 to November 18, 2016, MARIN engaged in a continuing pattern of harassment against CHAVEZ because CHAVEZ was gay.

13. MARIN also retaliated against CHAVEZ for reporting MARIN's harassment.

14. MARIN's harassment and retaliation included, but was not limited to:

   a. denying CHAVEZ showers that CHAVEZ was entitled to;

   b. threatening to give CHAVEZ disciplinary tickets for taking showers that CHAVEZ was entitled to;

   c. when CHAVEZ did shower, watching CHAVEZ while he was in the shower, and then watching CHAVEZ get dressed when he got out;

   d. taunting, mocking, and laughing at CHAVEZ;

   e. giving CHAVEZ the middle finger;

   f. calling CHAVEZ a "fag";

   g. informing other inmates of CHAVEZ's sexuality;

   h. mocking CHAVEZ's sexuality in front of other inmates;

   i. telling other inmates that CHAVEZ "sucks dicks";

   j. telling other inmates CHAVEZ was a "snitch" because CHAVEZ had reported him to his supervisors;

   k. threatening to give CHAVEZ pretextual disciplinary tickets for reporting him to his supervisors;

    l. telling another inmate to "fuck up" CHAVEZ;

    m. causing other inmates to mock, intimidate, and degrade CHAVEZ;

    n. causing other inmates to threaten CHAVEZ;

    o. causing other inmates to use homophobic slurs against CHAVEZ;

    p. causing another inmate to call CHAVEZ a "faggot" and strike CHAVEZ in the face with a closed fist multiple times because CHAVEZ was gay; and

    q. causing another inmate to get in physical altercation with CHAVEZ because CHAVEZ was gay and was in the shower area at the same time as him;

15. Around March of 2016, CHAVEZ reported MARIN's harassment directly to TRUITT, one of MARIN's supervisors.

16. TRUITT told CHAVEZ that he would handle it, but did not actually do anything to correct the issue or to prevent future harassment.

17. MARIN continued to harass CHAVEZ.

18. About one month later, while ROBINSON was still the Warden of Sheridan, CHAVEZ reported MARIN's harassment directly to her.

19. ROBINSON was dismissive of CHAVEZ, scolded him, and told him to go to WORTH, who was MARIN's direct supervisor.

20. Shortly thereafter, CHAVEZ reported MARIN's harassment directly to WORTH.

21. WORTH ignored his complaint, no one did anything to correct the issue or to prevent future harassment, and MARIN continued to work in the same building that CHAVEZ was housed in.

22. MARIN continued to harass and/or retaliate against CHAVEZ.

23. CHAVEZ subsequently filed a grievance against MARIN, but, again, no one did anything to correct the issue or to prevent future harassment and retaliation.

24. MARIN continued to harass and/or retaliate against CHAVEZ.

25. Because MARIN was continuing his conduct despite these efforts, CHAVEZ went to Anna Czerniak, an on-site mental healthcare worker employed by WestCare Foundation, and reported MARIN's actions to her.

26. Anna Czerniak scheduled CHAVEZ for an appointment with an on-site doctor, told CHAVEZ to report MARIN's actions to internal affairs, and made a phone call to IDOC staff to report MARIN on CHAVEZ's behalf.

27. Finally, about two months after CHAVEZ had initially reported MARIN to TRUITT, MARIN was moved to another building.

28. MARIN was only moved to another building because Anna Czerniak reported his conduct—MARIN was moved the very same day that CHAVEZ reported MARIN to Anna Czerniak.

29. But, despite being moved, MARIN continued to have contact with CHAVEZ and continued harassing and retaliating against him.

30. After MARIN was moved, CHAVEZ filed another grievance about the continuing harassment and retaliation.

31. Again, no one did anything to correct the issue or prevent future harassment and retaliation.

32. So, on June 2, 2016, CHAVEZ filed a lawsuit in the Northern District of Illinois [16-cv-05836][1] against MARIN based on his actions against him.

33. Yet, MARIN continued to harass and retaliate against CHAVEZ until CHAVEZ was released from Sheridan on November 18, 2016.

34. GOMEZ, after becoming Warden, was in charge of handling and responding to prisoner grievances and internal affairs reports at Sheridan.

---

[1] This lawsuit was voluntarily dismissed by agreement, without prejudice, on March 16, 2017.

35. In response to multiple grievances and an internal affairs report submitted by CHAVEZ, GOMEZ simply signed off on the findings of wholly inadequate investigations by grievance counselors, internal affairs officers, and/or Prison Rape Elimination Act compliance officers.

36. The investigations conducted in response to CHAVEZ's grievances and internal affairs report were shams: the internal affairs officers and grievance counselors asked MARIN about CHAVEZ's allegations and then accepted MARIN's flat denials, despite evidence and witnesses that corroborated CHAVEZ's claims.

37. GOMEZ signed off on findings that these allegations were unsubstantiated, despite knowledge that the investigations were wholly inadequate and that there was corroborating evidence that was ignored.

38. In doing so, GOMEZ simply looked the other way and knowingly ignored MARIN's conduct.

39. As a result of TRUITT's, ROBINSON's, WORTH's, and GOMEZ's actions and/or inactions, MARIN was allowed to continue his pattern of harassment and retaliation against CHAVEZ.

40. MARIN's, TRUITT's, ROBINSON's, WORTH's, and GOMEZ's above-described acts were intentional, willful, wanton, and malicious and done with reckless indifference to and callous disregard for CHAVEZ's rights. CHAVEZ requests punitive damages to punish and deter them and other prison leadership, staff, and guards from engaging in similar conduct

41. As a result of MARIN's, TRUITT's, ROBINSON's, WORTH's, and GOMEZ's actions and inactions, CHAVEZ sustained damages—he suffered physical, mental, and emotional harm.

42. CHAVEZ has had to retain an attorney to render legal assistance to him in this civil action so that he might vindicate his constitutional rights.

### COUNT I: CRUEL AND UNUSUAL PUNISHMENT
### AGAINST DEFENDANT RICARDO MARIN

43. CHAVEZ hereby incorporates and re-alleges each of the above paragraphs as though fully set forth at this place.

44. MARIN's lengthy pattern of intentional harassment, retaliation, and discrimination, which included direct threats by MARIN, as well as instructions to another inmate to "fuck up" CHAVEZ, among other things, and which caused other inmates to threaten, mock, degrade, and use physical force against CHAVEZ, constituted cruel and unusual punishment under the Eighth Amendment.

45. MARIN's conduct greatly increased the likelihood that CHAVEZ would suffer harm.

46. As a result of MARIN's conduct, CHAVEZ did suffer severe harm.

47. Therefore, MARIN is liable to CHAVEZ under 42 U.S.C. Section 1983.

### COUNT II: EQUAL PROTECTION VIOLATIONS
### AGAINST DEFENDANT RICARDO MARIN

48. CHAVEZ hereby incorporates and re-alleges each of the above paragraphs as though fully set forth at this place.

49. CHAVEZ is gay, and thus is a member of a protected class.

50. MARIN engaged in a pattern of intentional harassment, retaliation, and discrimination against CHAVEZ because he was gay and because he had reported MARIN's harassment.

51. MARIN did not harass non-gay inmates as he did CHAVEZ.

52. There was no legitimate penal interest in MARIN harassing and retaliating against CHAVEZ.

53. MARIN's actions violated CHAVEZ's rights under the Fourteenth Amendment to be free from sexual harassment and from discrimination based on his sexual orientation.

54. As a result of MARIN's conduct, CHAVEZ suffered severe harm.

55. Therefore, MARIN is liable under 42 U.S.C. Section 1983.

### COUNT III: RETALIATION (1ST AMENDMENT VIOLATIONS) AGAINST DEFENDANT RICARDO MARIN

56. CHAVEZ hereby incorporates and re-alleges each of the above paragraphs as though fully set forth at this place.

57. CHAVEZ engaged in activities protected by the First Amendment when he reported MARIN's harassment and filed grievances against him.

58. MARIN retaliated against CHAVEZ for engaging in these protected activities by informing other inmates that CHAVEZ was a gay and/or was a "snitch," by threatening to give CHAVEZ disciplinary tickets, and by instructing an inmate to "fuck up" Chavez.

59. MARIN's conduct greatly increased the likelihood that CHAVEZ would suffer harm.

60. As a result of MARIN's conduct, CHAVEZ did suffer severe harm.

61. The harm MARIN caused was likely to deter CHAVEZ from making future complaints or filing future grievances.

62. Therefore, MARIN is liable to CHAVEZ under 42 U.S.C. Section 1983.

### COUNT IV: FAILURE TO PROTECT AGAINST RICARDO MARIN

63. CHAVEZ hereby incorporates and re-alleges each of the above paragraphs as though fully set forth at this place.

64. MARIN knowingly exposed CHAVEZ to a heightened risk of harm by telling other inmates that he was gay, "sucks dicks," was a "snitch," and by telling another inmate to "fuck up" CHAVEZ.

65. MARIN acted with intent to cause harm or with deliberate indifference to CHAVEZ's safety.

66. As a result of MARIN's conduct, CHAVEZ suffered severe harm.

67. Therefore, MARIN is liable to CHAVEZ under 42 U.S.C. Section 1983.

## COUNT V: FAILURE TO PROTECT AND/OR INTERVENE
## AGAINST FORMER WARDEN NIKKI ROBINSON, WARDEN DAVID GOMEZ, LIEUTENANT CHARLES TRUITT & MAJOR REBECCA WORTH

68. CHAVEZ hereby incorporates and re-alleges each of the above paragraphs as though fully set forth at this place.

69. MARIN committed several continuing constitutional violations against CHAVEZ, as described more fully herein.

70. ROBINSON, GOMEZ, TRUITT, and WORTH each knowingly exposed CHAVEZ to a heightened risk of harm by facilitating or consciously ignoring MARIN's harassment of, discrimination against, and retaliation against CHAVEZ.

71. ROBINSON, GOMEZ, TRUITT, and WORTH acted with intent to cause harm or with deliberate, reckless indifference to CHAVEZ's safety by not responding to his well-supported complaints against MARIN.

72. Moreover, ROBINSON, GOMEZ, TRUITT, and WORTH each had knowledge that MARIN was going to continue harassing, discriminating against, and retaliating against CHAVEZ.

73. ROBINSON, GOMEZ, TRUITT, and WORTH each had a responsibility to prevent MARIN from continuing to cause CHAVEZ harm and had accepted that responsibility.

74. ROBINSON, GOMEZ, TRUITT, and WORTH each had realistic opportunities to prevent MARIN from continuing to cause CHAVEZ harm.

75. Yet, ROBINSON, GOMEZ, TRUITT, and WORTH failed to take reasonable steps to prevent such harm from occurring.

76. As a result of each of their actions or inactions, CHAVEZ suffered harm.

77. Therefore, ROBINSON, GOMEZ, TRUITT, and WORTH are liable to CHAVEZ under 42 U.S.C. Section 1983.

### COUNT VI: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (STATE LAW CLAIM) AGAINST DEFENDANT RICARDO MARIN

78. CHAVEZ hereby incorporates and re-alleges each of the above paragraphs as though fully set forth at this place.

79. The conduct of MARIN described herein was deliberately indifferent, extreme, and outrageous.

80. MARIN knew or should have known that there was a high probability that his conduct, as described more fully herein, would cause CHAVEZ severe mental, physical, or emotional harm.

81. MARIN intended to cause CHAVEZ severe mental, physical, or emotional harm.

82. As a result of MARIN's conduct, CHAVEZ did suffer severe harm.

83. MARIN's conduct was beyond the bounds of decency.

84. Therefore, MARIN is liable to CHAVEZ under Illinois law.

**WHEREFORE**, Plaintiff RIGOBERTO CHAVEZ, JR., requests that Defendants be found liable for the claims against them, that judgment be entered in his favor, and that he be awarded all remedies to which he is entitled under the law, including but not limited to:

1) compensatory damages;
2) punitive damages;
3) costs of the suit;
4) any interest allowable; and
5) attorney's fees (for the federal claims only).

### PLAINTIFF REQUESTS TRIAL BY JURY

Respectfully submitted,

DATE: 4/25/17      BY: s/ Steven J. Molitor

Law Office of Julie O. Herrera
53 W. Jackson, Suite 1615
Chicago, IL 60604

Tel: 312-697-0022 | Fax: 312-697-0812
smolitor@julieherreralaw.com